# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JULIAN HAYES,** | : | |
|          **Plaintiff,** | : | |
| | : | |
|          v. | : | **CIVIL ACTION** |
| | : | **No. 21-4393** |
| **CITY OF PHILADELPHIA, PA** | : | |
| **and FREE LIBRARY OF PHILADELPHIA,** | : | |
| | : | |
|          **Defendants.** | : | |

**McHUGH, J.**                                                                                                   **SEPTEMBER 27, 2022**

## MEMORANDUM

Plaintiff Julian Hayes brings this action pro se against the City of Philadelphia and the Free Library of Philadelphia for unlawful discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Pennsylvania Human Relations Act ("PHRA"). Plaintiff alleges various forms of discrimination on the basis of his race and religion. The City of Philadelphia moves to dismiss.

As to the Free Library of Philadelphia, it is a department of the City of Philadelphia and not separately amenable to suit. As to Plaintiff's failure to promote claim, it is barred by the statute of limitations. As to the remainder of Plaintiff's claims, he has failed to state a cause of action. The motion to dismiss will therefore be granted, with leave to amend granted as to those claims which are not definitively barred.

**I.    Factual Allegations and Procedural Background**

Plaintiff, whose race is African American and religion is Christian, was hired by the Free Library of Philadelphia as a Municipal Guard on or about May 19, 2014. Sometime between May 2014 and July 2015, Plaintiff took an examination that was a prerequisite to qualify for promotion

to Municipal Guard Supervisor.  In a July 1, 2015 email, the City of Philadelphia Office of Human Resources ("OHR") notified him that he passed the examination.  In that email, OHR also notified Plaintiff that his rank on the eligible list for the position was fifth; that his "rank may change as a result of appeals, removal of candidates from the eligible list, or other actions that occur after the establishment of the eligible list"; that the maximum duration on the eligible list was two years; and that a human resources representative would contact him to schedule an interview once there were sufficient vacancies to reach his rank on the eligible list.  ECF 2-1 at 4.

In both 2018 and January 2020, Plaintiff complained of racial discrimination to the Free Library.  Also in January 2020, Plaintiff sent a letter to the Free Library stating that he and another library employee saw an individual kiss a young girl in the workplace in December 2019.  In this letter, Plaintiff stated that his and his coworker's having to witness this conduct constituted a violation of the City's Sexual Harassment policy.  Plaintiff also stated that he would be filing a private criminal complaint against the individual for "the criminal act of 'Corrupting the Morals of a Minor' and Inappropriate Sexual Contact with an under-age person." ECF 2-1 at 1.

Around August 2020, Plaintiff sent a mass email[1] stating that the Free Library was not sanitizing workstations and was failing to protect its employees from COVID-19.  Then, in September 2020, the Free Library issued Plaintiff a thirty-day suspension for what he characterizes as his "whistleblowing."  Roughly two months later, Plaintiff complained of retaliation to the Human Resources Department.  Shortly after, the Free Library discharged Plaintiff for purportedly threatening the Human Resources Department.

---

[1] Plaintiff's Complaint does not specify to whom the email was sent.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on June 17, 2021. Four days later, Plaintiff submitted a Charge of Discrimination to the Philadelphia Commission on Human Relations, alleging discrimination based on race, discrimination based on religion, and retaliation. The EEOC closed its file on Plaintiff's charge and provided Plaintiff with notice of his right to sue on July 6, 2021.

Plaintiff filed his complaint on October 4, 2021, providing the following factual background:

> I, Julian Hayes, am claiming discrimination on the basis of race, religion, and retaliation for the violation of the Occupational Safety and Health Administration guidelines when raising COVID 19 concerns.
>
> I was also retaliated against for reporting a potential child predator at the workplace who was caught committing sexual misconduct with what appeared to be an underaged young girl.

Plaintiff concludes his complaint with a broad prayer for relief.

## II.     Standard of Review

Within the Third Circuit, motions to dismiss under Fed. R. Civ. P. 12(b)(6) are governed by the well-established standard set forth in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

Although courts must afford pro se litigants leeway when interpreting their pleadings, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013).[2]

---

[2] On April 20, 2022, I directed the Clerk of Court to make Plaintiff's Complaint and Request for Appointment of Counsel available to attorneys on the Employment Attorney Panel for sixty days. On July 19, 2022, I ordered that the case be removed from the Employment Panel because no attorney volunteered to accept appointment. I also ordered the Plaintiff to inform the court of his intention to

### III. Discussion

#### A. The Free Library of Philadelphia is not an independent entity that can be sued

Plaintiff's Complaint lists both the City of Philadelphia and the Free Library of Philadelphia as Defendants. But departments of the City of Philadelphia do not have separate corporate existence from the City and cannot be named defendants in a lawsuit. 53 P.S. § 16257; *see also Burton v. City of Philadelphia,* 121 F. Supp. 2d 810, 812 (E.D. Pa. 2000) (citing 53 P.S. § 16257). Philadelphia Home Rule Charter § 3-100(e) lists the Board of Trustees of the Free Library of Philadelphia as part of Philadelphia's Executive and Administrative Branch, making it "very clear that the 'Free Library of Philadelphia' is simply a department of the City of Philadelphia, and not an independent entity which can be sued." *Harris v. Free Libr. of Philadelphia*, No. CIV.A. 08-CV-01668-J, 2008 WL 2954175, at *1 (E.D. Pa. July 31, 2008). As a result, the Free Library of Philadelphia is dismissed with prejudice.

#### B. Plaintiff's failure to promote claim

In Pennsylvania, complaints under Title VII must be brought within 300 days of the alleged unlawful employment practice, and complaints under the PHRA must be brought within 180 days. *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 164-165 (3d Cir. 2013) (citing U.S.C.A. § 2000e-5(e)(1) and 43 P.S. § 959). These statutes of limitations apply to failure to promote claims. *See Mandel*, 706 F.3d at 165; *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). Claims under both statutes are interpreted coextensively. *Atkinson v. LaFayette Coll.*, 460 F.3d

---

proceed with the matter and further ordered that he respond to Defendant's Motion to Dismiss, pending since January 14, 2022. Plaintiff has neither responded to this Order nor answered the motion.

447, 454 n.6 (3d Cir. 2006) ("Claims under the PHRA are interpreted coextensively with Title VII claims.").

The July 1, 2015 email notifying Plaintiff that he was eligible for promotion to Municipal Guard Supervisor establishes two relevant dates for calculating whether the statutes of limitations have run on the failure to promote claim. The first date is the date on which Plaintiff was notified that he passed the examination for the position of Municipal Guard Supervisor: July 1, 2015. The second date is the last date on which Plaintiff would have remained on the eligible list: two years later, or July 1, 2017. Both dates are more than 300 days removed from the date on which Plaintiff submitted his charge to the EEOC: June 17, 2021. The respective statutes of limitations therefore bar Plaintiff's failure to promote claim.[3]

### C. Plaintiff's retaliation claims

To establish a *prima facie* case of discriminatory retaliation, a plaintiff must allege "(1) [that he engaged in] protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Marra v. Phila. Hous. Auth.,* 497 F.3d 286, 300 (3d Cir. 2007) (quoting *Fogleman v. Mercy Hosp. Inc.,* 283 F.3d 561, 567-68 (3d Cir. 2002)). Plaintiff asserts several bases for a discriminatory retaliation claim, but none can survive Defendant's Motion to Dismiss.

---

[3] Even if Plaintiff's failure to promote claim were timely, I would still need to dismiss it, as Plaintiff has not alleged facts to support a *prima facie* case of discriminatory failure to promote. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Plaintiff has not alleged that OHR was actively seeking applicants, and the July 2015 email implies that it may not have been: "[w]hen we have sufficient vacancies to reach your rank on the eligible list, you will be contacted by a human resources representative to schedule an appointment for a job interview." ECF 2-1 at 4. Furthermore, Plaintiff has not alleged any facts suggesting that the position remained open and that OHR continued to seek applicants from persons of Plaintiff's qualifications.

First, Plaintiff claims that his firing was in retaliation for raising COVID-19 concerns after the Free Library of Philadelphia violated Occupational Safety and Health Administration ("OSHA") guidelines. However, as Defendant notes, raising such concerns is not by itself a protected activity, as Title VII protects plaintiffs from retaliation only if they objected "to discrimination based on a protected category, such as age or race."[4] *Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 193-94 (3d Cir. 2015). Because Plaintiff has not alleged a connection between raising COVID-19 concerns and protected activity under Title VII, his having raised these concerns does not support a discriminatory retaliation claim.[5]

Next, Plaintiff claims that his termination was in retaliation for reporting a potential child predator at the workplace. Although the Complaint itself does not provide any more detail, Plaintiff has attached a January 9, 2020 letter to the Free Library, in which Plaintiff stated that his witnessing of inappropriate conduct with a young girl constituted a violation of the City's Sexual Harassment policy. Assuming without deciding that Plaintiff's reporting of this conduct might qualify as protected activity under Title VII,[6] Plaintiff has not pled facts that allow for a reasonable

---

[4] It should be noted that although Plaintiff's Complaint seeks relief in the form of "[d]irect[ing] the defendant to reasonably accommodate the plaintiff's disabilities," Plaintiff has nowhere alleged facts related to disability.

[5] Plaintiff has attached to the Complaint a COVID-19 Retaliation Complaint Form, implying that Philadelphia's Employee Protections in Connection with COVID-19 Emergency Health Order Ordinance, Phila. Code Ch. 9-5000, may provide a basis for his claim. But that ordinance only applies to violations of orders or regulations issued by the Pennsylvania Department of Health or the Philadelphia Department of Public Health, not those issued by OSHA. Phila. Code § 9-5001. Defendant also correctly notes that OSHA regulations do not apply when the employer is a municipal entity like the City of Philadelphia. *See* 29 U.S.C. § 652(5).

[6] *See* EEOC, Enforcement Guidance on Retaliation and Related Issues, EEOC-CVG-2016-1 (2016) ("Protected opposition includes actions such as . . . resisting sexual advances or intervening to protect others.").

inference of a causal connection between Plaintiff's reporting of this conduct and his suspension and termination.

In the Third Circuit, courts principally focus on two factors to determine whether an employer's action was causally connected to plaintiff's protected activity: "timing and evidence of ongoing antagonism." *Abramson v. William Paterson Coll. of New Jersey*, 260 F.3d 265, 288 (3d Cir. 2001). But "[t]hese are not the exclusive ways to show causation," as "[t]he element of causation, which necessarily involves an inquiry into the motives of an employer, is highly context-specific." *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177-78 (3d Cir. 1997). In this case, Plaintiff alleges he was fired shortly after November 2020, nearly a year after he sent his letter to the Free Library. This gap in time "between the protected activity and the adverse action, without more, cannot create an inference of causation." *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007) (concluding that a gap of three months was too long to create an inference of causation by itself) (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). Plaintiff has not pled any other facts that could support a reasonable inference of a causal connection. In fact, Plaintiff's Complaint and attached Charge of Discrimination suggest that his suspension and termination were caused by the way in which he approached his concern over unsanitary working conditions. As a result, Plaintiff has not "raise[d] a reasonable expectation that discovery will reveal evidence of the necessary element" of causation. *Fowler*, 578 F.3d at 213 (quoting *Graff v. Subbiah Cardiology Assocs., Ltd.*, No. CIV. 08-207, 2008 WL 2312671 (W.D. Pa. June 4, 2008)); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

Finally, Plaintiff has not pled facts to support a claim that he was retaliated against for objecting to racial discrimination. Plaintiff's Complaint does not mention race as a basis for a

7

retaliation claim, but his Charge of Discrimination before the Philadelphia Commission on Human Relations reads in relevant part:

> Sometime in 2018 and January 2020, I complained of racial discrimination to Respondent. On or about August 31, 2020, I sent a mass email that Respondent was not sanitizing workstations and failing to protect their employees. On or about September 2, 2020 Respondent issued me a thirty-day suspension for whistleblowing. In or around November 2020, I complained to HR about retaliation. Shortly after complaining, I was discharged by Respondent allegedly for threatening HR.

While Plaintiff has alleged that he engaged in protected employee activity—reporting racial discrimination—he has not alleged a causal link between that report and his suspension and termination; instead, he has alleged a causal connection between his reporting of alleged OSHA violations and his suspension and termination. As a result, his reporting of racial discrimination also fails to support a discriminatory retaliation claim.

### D. Plaintiff's failure to stop harassment claim

Courts in the Third Circuit have assessed failure to stop harassment claims under the same framework as hostile work environment claims. *See Vangjeli v. City of Phila*, No. CV 15-1566, 2015 WL 5793926, at *6 (E.D. Pa. Sept. 30, 2015), *aff'd sub nom. Vangjeli v. City of Philadelphia*, 655 F. App'x 132 (3d Cir. 2016); *Hanzer v. Mentor Network*, No. CA 12-363-LPS-MPT, 2012 WL 3095353, at *2 (D. Del. July 30, 2012), *report and recommendation adopted*, No. CIV.A. 12-363-LPS, 2012 WL 4342110 (D. Del. Sept. 20, 2012). Under that framework, a plaintiff must show that "1) the employee suffered intentional discrimination because of his/her [protected status], 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of *respondeat superior* liability [meaning the employer is responsible]." *Castleberry v. STI Group*, 863 F.3d 259, 263 (3d Cir. 2017).

Plaintiff has not pled any facts related to these elements, other than asserting the conclusion that he was discriminated against on the basis of his race and religion.  I must therefore dismiss this claim.

### E.  Plaintiff's failure to reasonably accommodate religion claim

Plaintiff has likewise not pled facts to support a failure to reasonably accommodate religion claim.  In *E.E.O.C. v. Abercrombie & Fitch Stores*, the Supreme Court stated that "the rule for disparate-treatment claims based on a failure to accommodate a religious practice is straightforward: An employer may not make an applicant's religious practice, confirmed or otherwise, a factor in employment decisions."  575 U.S. 768, 773 (2015).  In the Third Circuit, to allege a *prima facie* case of religion discrimination under Title VII the plaintiff must show that he "(1) holds a sincere religious belief that conflicts with a job requirement; (2) informed his employer of the conflict; and (3) was disciplined for failing to comply with the conflicting job requirement." *Groff v. DeJoy*, 35 F.4th 162, 168 (3d Cir. 2022).

Plaintiff has not pled any facts other than that he is Christian, and he summarily concludes that he was therefore discriminated against because of his religion.  I must therefore dismiss his religious discrimination claim.

### F.  Plaintiff's unlawful termination claim

Finally, I must dismiss Plaintiff's unlawful termination claim.  For a *prima facie* case of discriminatory termination, a plaintiff must allege that (1) he belongs to a protected class, (2) he is qualified for the position, (3) he was subject to an adverse employment action despite being qualified, and (4) under circumstances that support an inference of discrimination, the employer continued to seek out individuals with qualifications similar to the plaintiff. *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003).  Plaintiff belongs to a protected class, and I will infer that

he claims to be qualified for his position at the Free Library of Philadelphia. Plaintiff's attached Charge of Discrimination to the Philadelphia Commission on Human Relations also alleges temporal proximity—he was discharged shortly after November 2020. But nowhere in Plaintiff's Complaint or attachments does he allege circumstances to support an inference of discrimination, other than asserting the general conclusion that he was discriminated against on the basis of his race. Plaintiff's unlawful termination claim is therefore dismissed.

**IV.     Conclusion**

For the reasons set forth above, Defendant City of Philadelphia's Motion to Dismiss will be granted. An appropriate order follows.

/s/ Gerard Austin McHugh
United States District Judge